ADAMS OUTDOOR ADVERTISING, LTD., a limited partnership, by its general partners, Adams Outdoor Advertising, Inc. and Stephen Adams, Pocono Outdoor Advertising Co., FKM Advertising Co., FKM Properties, John W. Wallace, James Ballard, Jerry Rubin, Elmer M. Rinehart, Seymour Katz, Lawrence T. Simon, Robert Stofflett and Shirley Stofflett, His Wife, Appellants,

v.

BOROUGH OF STROUDSBURG
and Jeffrey B. Wilkins.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.

Decided Oct. 20, 1995.

Reargument Denied Dec. 7, 1995.

David H. Moskowitz, for appellants.

Ralph A. Matergia, for appellees.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Adams Outdoor Advertising, Inc., Stephen Adams, Pocono Outdoor Advertising Company, FKM Advertising Company, FKM Properties, John W. Wallace, James Ballard, Jerry Rubin, Elmer M. Rinehart, Seymour Katz, Lawrence T. Simon, Robert Stofflett, and Shirley Stofflett (Sign Owners), appeal a decision of the Court of Common Pleas of Monroe County (trial court) granting summary judgment in favor of the Borough of Stroudsburg (Borough) and Jeffrey B. Wilkins.

On August 7, 1991, the Stroudsburg Borough Council (Council) enacted Ordinance No. 706 (Ordinance), which provided for the payment of an annual tax for off-premises signs[1] located within the Borough. More specifically, the Ordinance required that property owners obtain an annual license for off-premises signs located on their property and pay an annual tax calculated at a rate of $2.00 per every square foot of the face of the sign. The Ordinance expressly exempted business signs, construction signs, directory signs, real estate signs, and political signs[2] from the licensing and taxing requirements.

The preamble to the Ordinance sets forth its purpose, indicating that, as a result of an increase in the volume of traffic, the Borough's costs for police, street, fire, and emergency management services have also increased. The preamble further specified that the tax was being imposed because the owners of off-premises signs, through leasing and rental fees, benefit from this increase in traffic volume.[3]

The Sign Owners subsequently filed a complaint for declaratory relief in the trial court, contending that the Ordinance is invalid and requesting the trial court to enjoin the Borough from imposing the licensing fee and tax upon the signs. After the Borough filed an answer to the complaint, both parties filed cross-motions for summary judgment. Based upon the affidavits, depositions, and pleadings before it, the trial court found that the Ordinance was not unconstitutional and entered judgment in favor of the Borough and against the Sign Owners. The Sign Owners then filed this appeal.

We begin by observing that, unlike a license fee, the purpose of which is to offset the costs of regulation, a tax is imposed for the purpose of raising revenue. *Talley v. Commonwealth,* 123 Pa.Cmwlth. 313, 553 A.2d 518 (1989). Even though the imposition of or exemption from a tax may advance other governmental concerns, e.g., the manufacturing exemption from state taxation serves to encourage manufacturing within Pennsylvania, the primary purpose of taxes is always to raise money for the taxing authority. *White v. Medical Professional Liability Catastrophe Loss Fund,* 131 Pa. Cmwlth. 567, 571 A.2d 9 (1990). Moreover, the taxing authority possesses wide discretion regarding matters of taxation, with this discretion being limited by the requirements of the Equal Protection and Uniformity Clauses of the United States and Pennsylvania Constitutions. *Leventhal v. City of Philadelphia,* 518 Pa. 233, 542 A.2d 1328 (1988). Legislation that imposes a tax is presumed to be constitutional, and the taxpayer challenging that legislation bears the burden of proving that it clearly, palpably and plainly violates the constitution. *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985); *Brown v. Department of Revenue,* 155 Pa. Cmwlth. 197, 624 A.2d 795 (1993), *aff'd,* 536 Pa. 543, 640 A.2d 412 (1994). Any doubts regarding the constitutionality of tax legislation should be resolved in favor of upholding its constitutionality. *Id.* In the instant case, because the parties admitted during oral argument that this is a tax and not a license fee, the only issues before us are whether the tax is uniform and whether it is an unlawful infringement upon the Sign Owners' First Amendment rights.[4]

1. Section 401 of the Ordinance defines off-premises signs as:

 A sign visible from a public way that directs attention to a business, commodity, service, entertainment, attraction, or subject sold, offered, or existing elsewhere than upon the same lot where such sign is displayed. The term off-premises sign shall include an outdoor advertising sign (billboard) on which space is leased or rented by the owner thereof to others for the purpose of conveying a commercial or non-commercial message.

2. The definitions of these signs set forth in the Ordinance indicate that they are all on-premises signs, i.e., they contain information pertaining to the activity located on the premises where the signs are posted. Further, in construing the Ordinance, the Borough considers activities on the premises to include the expression of opinions and political views. *See* Affidavit of Harold A. Bentzoni.

3. The preamble also indicated that off-premises signs are not assessed for purposes of real property taxes.

4. Because the Sign Owners have conceded that this is a tax, and not a fee, we need not address their argument that it exceeds the reasonable costs of administration of the Ordinance. This argument is not applicable to tax legislation, but

## I.

■ The Sign Owners' primary contention is that the tax imposed by the Ordinance violates the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.[5] The Sign Owners argue that, since the tax is imposed on off-premises signs but is not imposed upon on-premises signs or other types of structures, it affects only a small group of taxpayers and is, therefore, unconstitutional.

■ In the context of tax legislation, equal protection and uniformity do not require absolute equality and perfect uniformity in the imposition of a tax. *City of Pittsburgh v. Commonwealth*, 522 Pa. 20, 559 A.2d 513 (1989). However, the legislation cannot treat similarly situated entities differently. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). If a tax is imposed only when an entity falls within a certain class, the legislative body must have a reasonable basis for singling out that category; i.e., the classification must be non-arbitrary, as well as reasonable and just. *Brown v. Department of Revenue*, 155 Pa. Cmwlth. 197, 624 A.2d 795 (1993), *aff'd*, 536 Pa. 543, 640 A.2d 412 (1994); *City of Pittsburgh v. Commonwealth*, 522 Pa. 20, 559 A.2d 513 (1989). Absent a real distinction between the classes in tax legislation, it will be deemed unconstitutional. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985).

Here, there is a real and non-arbitrary distinction between off-premises and on-premises signs that would permit the Borough to classify the two differently for taxation purposes. An off-premises sign, which is classified as a billboard, is of considerable size and bears no direct relationship to the activities on the property on which it is located. The messages contained on off-premises signs generally change on a relatively fre-

quent basis depending upon the company leasing the sign for advertising purposes. Additionally, off-premises signs, through leasing and rental fees, have the capacity to generate income, and as such, are a business in and of themselves. On the other hand, on-premises signs are generally smaller in size and bear some direct relationship to the property on which they are posted. They generally are of a more permanent duration, changing only with the status of the activity located on the property. Finally, unlike off-premises signs, on-premises signs do not, by themselves, generate income. Just as we held in *Magazine Publishers of America v. Department of Revenue*, 151 Pa.Cmwlth. 592, 618 A.2d 1056 (1992), *aff'd*, 539 Pa. 563, 654 A.2d 519 (1995), that there was a reasonable distinction between newspapers and magazines based upon format and frequency of publication, as well as ability of newspapers to carry legal advertising, the differences between off-premises and on-premises signs are, if anything, more substantial and provide a reasonable and non-arbitrary basis for the Borough's drawing of a distinction between the two in the Ordinance.

■ Even if there is a reasonable distinction between off-premises and on-premises signs, thus making the Ordinance constitutional under the Equal Protection and Uniformity Clauses, the Sign Owners argue the tax nevertheless violates their First Amendment right to freedom and of the press. Citing to *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), and *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983), the Sign Owners argue that the Ordinance unconstitutionally penalizes select members of the print media, i.e., off-premises signs, and as such, violates the First Amendment.

---

instead, applies only to challenges to license fees. *See White v. Medical Professional Liability Catastrophe Loss Fund*, 131 Pa.Cmwlth. 567, 571 A.2d 9 (1990).

5. For purposes of constitutional challenges to a taxation scheme, both the Equal Protection

Clause and the Uniformity Clause require the same analysis. *Brown v. Department of Revenue*, 155 Pa.Cmwlth. 197, 624 A.2d 795 (1993), *aff'd*, 536 Pa. 543, 640 A.2d 412 (1994). Hence, the discussion set forth in this Opinion addresses the Sign Owners' challenges under both of these clauses.

In *Arkansas Writers' Project,* the Supreme Court held that a state tax, which was imposed upon some magazines and not upon others, infringed upon rights protected by the First Amendment.[6] As such, the Supreme Court reasoned, the state was required to prove that it had an overriding compelling interest to justify that discrimination, and that the tax was narrowly drawn to achieve that interest. Concluding that the state did not meet this burden of proof, the Supreme Court found the tax to be unconstitutional.[7] Similarly, in *Minneapolis Star,* the Supreme Court held that a use tax on the cost of paper and ink used for publications, for which there was a $100,000.00 annual exemption, was unconstitutional under the First Amendment.[8] In so doing, the Court reasoned that the tax singled out the press and also targeted a small group of newspapers, thus resembling a penalty for certain newspapers.

The Supreme Court, however, addressed this issue again in *Leathers v. Medlock,* 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991), in which it considered the constitutionality of a sales tax that was imposed only upon cable television and no other media. Discussing *Arkansas Writers' Project* and *Minneapolis Star,* the Supreme Court noted that those cases "demonstrate that differential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints." *Id.* at 477. Observing that there was nothing in the case to indicate that the tax was directed at suppressing particular ideas or that the tax was likely to stifle

the free exchange of opinions, the Supreme Court upheld the tax as constitutional. *Id.*

The reasoning of *Leathers* was subsequently applied by this Court in *Magazine Publishers of America v. Department of Revenue, supra.* In that case, which involved a challenge to a statute that taxed magazines but not newspapers, we rejected the argument that such a taxation scheme infringed upon the magazine publishers' First Amendment rights. In so doing, we observed that the tax "does not reflect any interest by the General Assembly in censoring [the publishers'] activities or stifling the free exchange of ideas." *Id.* 618 A.2d at 1061.

Here, there is nothing in the record or in the Ordinance suggesting that the tax was directed at suppressing any particular ideas or that it is likely to stifle the free exchange of opinions.[9] In fact, the reasons advanced by the Borough for the Ordinance are to the contrary: to off-set the costs associated with increased traffic, to enhance aesthetic values, and to improve vehicular safety. Moreover, because that tax was imposed upon all off-premises signs, it does not single out one small group of off-premises signs while exempting others from taxation. Under the reasoning of *Leathers,* therefore, the tax cannot be deemed to be unconstitutional.[10]

## II.

The Sign Owners also argue that the tax imposed by the Borough is unconstitutional because it violates their rights to free speech. The Sign Owners contend that the Borough Zoning Officer, in determining whether the sign is exempt from the tax,

---

6. The Supreme Court noted that the First Amendment claims were obviously intertwined with interests arising under the Equal Protection Clause. Because the tax directly implicated freedom of the press, the Supreme Court analyzed it primarily in First Amendment terms. *Arkansas Writers' Project,* 481 U.S. at 227 n. 3, 107 S.Ct. at 1727 n. 3.

7. The Supreme Court also found the tax to be unconstitutional because it was content based.

8. As in *Arkansas Writers' Project,* the Supreme Court did not consider Equal Protection violations.

9. This conclusion is further supported by the fact that the Ordinance does not prohibit off-premises advertising in the Borough. Moreover, under the Ordinance, there is no tax imposed, and consequently, no infringement upon other forms of media that would foster the exchange of ideas.

10. To hold otherwise would be absurd in light of several other Supreme Court cases that have found that a municipality's banning of off-premises outdoor advertising is constitutional. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Members of City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

must look to its content and determine whether it relates to the activity that occurs on the premises. As such, the Sign Owners argue, the Ordinance unconstitutionally imposes a content based tax.

■■■ As the Sign Owners correctly argue in their brief, a tax or fee on speech, the amount of which depends upon the content of that speech, is constitutionally suspect. *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Such a tax or fee will be found to be constitutional only if the government shows that it is necessary to serve a compelling interest and that it is narrowly drawn to achieve that end. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). However, if the regulation is content neutral, i.e., it does not consider the content of the message in determining whether the sign is to be taxed, then the government need only prove that the ordinance is narrowly tailored to serve a significant governmental interest, and that it leaves open ample alternative channels for communication. *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 66, *rehearing den'd,* 492 U.S. 937, 110 S.Ct. 23, 106 L.Ed.2d 636 (1989).[11]

■■■ In determining whether a governmental regulation of speech is content based, our principal inquiry is whether the government adopted the regulation because of its disagreement with the message to be conveyed by the speech. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). In other words, the government's purpose in enacting the legislation is the Court's controlling consideration, and if that purpose is unrelated to the content of the speech, then the regulation will be deemed to be content neutral. *Ward, supra.* If, on the other

hand, the purpose behind the regulation is related to the content of the speech, or if, in determining whether the regulation applies, one must look to the content of the speech, then, absent a compelling reason offered by the government, it will be found to be unconstitutional. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987).

In the present case, the Ordinance imposes the tax on all off-premises signs regardless of their content. Moreover, in adopting the Ordinance, the Borough Council considered the increase in traffic and concomitant costs that benefit the owners of off-premises signs, as well as aesthetics and vehicular safety. The Borough Council did not adopt the Ordinance because it disagreed with the messages conveyed on off-premises signs. Furthermore, because the exemption for activity occurring on-premises includes the expression of opinions or political beliefs, and because the Borough Zoning Officer mechanically applies the tax to all off-premises signs and to no on-premises signs,[12] the Ordinance is content neutral. *See Rappa v. New Castle County,* 18 F.3d 1043, 1067 (3d Cir.1994) (holding that tax exemption for signs advertising activities conducted on-premises is not content based).

### III.

■■■ The Sign Owners contend that the Ordinance is unconstitutional because it disadvantages non-commercial speech. Citing to *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Sign Owners contend that, because the Ordinance imposes a tax on non-commercial signs, i.e., off-premises signs with non-commercial messages, while it exempts various types of commercial speech, i.e., on-

---

11. While neither party argues that the Borough does not have a significant interest or that the Ordinance does not leave ample avenues for communication, we note that these conditions have clearly been met by the reasons proffered by the Borough for the Ordinance and by the fact that opinions and political views may be expressed via on-premises signs.

12. Although neither of these facts are expressly stated in the Ordinance, the affidavits adduced in support of the motions for summary judgment indicated that this is how the Ordinance is applied. In considering the constitutionality of the Ordinance, we can examine the Borough's construction thereof, including its interpretation and implementation of the Ordinance. *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

premises signs, it infringes on their right to free speech under the First Amendment.

In *Metromedia, Inc.*, the Supreme Court, recognizing that non-commercial speech is afforded a greater degree of protection under the First Amendment than commercial speech, invalidated a portion of the city ordinance that expressly banned all non-commercial messages, both on-site and off-site, while permitting on-site commercial advertising. In so doing, the Supreme Court held that the city had failed to offer any compelling reasons for its ban of all non-commercial messages. However, also in that case, the Supreme Court did uphold a portion of the ordinance banning all off-site advertising signs while permitting on-site billboards. Noting that the total ban on all off-site signs was directly related to the objectives of traffic safety and aesthetics, and deferring to the City's judgment that its interests in those objectives should yield to the greater interest of on-site commercial advertising, the Supreme Court upheld as constitutional that portion of the ordinance. *Id.*

Despite the Sign Owners' contention, *Metromedia* is simply inapplicable to the present case. First, it involved the regulation of billboards via the prohibition of off-premises signs, not, as here, the imposition of a tax on such signs.[13] Also, unlike in *Metromedia*, the Borough in the instant case does not seek to ban off-premises signs. Even if we were to assume that *Metromedia* did apply to the facts of this case, its holding that the city's ban of all off-premises signs was constitutional would be supportive of the Borough's actions and contrary to the Sign Owners' position. The reasons proffered by the Borough for imposing the tax, i.e., to offset the costs on increased traffic, to improve aesthetics, and to improve vehicular safety, were found

by the Supreme Court to be sufficient to support a municipality's ban of all off-premises signs.[14]

### IV.

Finally, the Sign Owners contend that the tax is invalid because it violates their rights to due process by taking their property without providing them with just compensation. Citing to *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), in which the Supreme Court held that a regulation that denies a landowner all economically beneficial or productive use of his or her land will be considered to be a taking for which compensation is warranted, the Sign Owners argue that the tax would prevent some of them from leasing to off-premises signs at a profit. This, the Sign Owners argue, constitutes a taking of property without just compensation.

In making this argument, the Sign Owners fail to realize that *Lucas* involves a regulation, and the instant case involves a tax. As the Supreme Court observed in *City of Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974), courts have consistently refused to entertain a due process claim that a tax is so excessive or unreasonable so as to cause a business to become unprofitable, and therefore, constitutes a taking. In *Alco Parking*, the operators of off-street parking facilities challenged the constitutionality of a Pittsburgh City Ordinance that imposed a twenty percent tax on the operators' gross receipts, contending that the tax was unreasonably high and constituted a taking without compensation. The Supreme Court refused to analyze the tax un-

---

13. This distinction is also significant with respect to the Sign Owners' argument that the Ordinance unconstitutionally favors one type of commercial speech over another. In making this argument, the Sign Owners cite to *City of Cincinnati v. Discovery Network, Inc.*, — U.S. —, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). In that case, however, the Supreme Court struck down a city ordinance that banned all commercial handbills, stating that there must be a reasonable fit between the City's regulation of commercial advertising and its stated purpose. Here, there is no ban, and in fact, no regulation of commercial

advertising in the Borough. Instead, there is only a tax on all off-premises signs, both commercial and non-commercial. As such, *Discovery Network* likewise is not applicable here.

14. Using this reasoning, and in light of the fact that on-premises signs can convey political messages, we reach the same conclusion with respect to the Sign Owners' contention that the tax improperly burdens political messages. Therefore, we will not address that contention in depth in this Opinion.

der the operators' takings argument, stating that, so long as the tax is within the power of the taxing authority, it will not be struck down as violative of due process under the Fifth Amendment. *Id.*[15]

Accordingly, the decision of the trial court granting summary judgment in favor of the Borough and against the Sign Owners is affirmed.[16]

## ORDER

AND NOW, this 20th day of October, 1995, the order of the Court of Common Pleas of Monroe County at No. 3196 Civil 1993, dated December 22, 1994, is affirmed.

---

**15.** The Sign Owners also argue that the tax operates as a prior restraint on speech because it would tax non-commercial on-premises signs. This argument, however, disregards the fact that the Ordinance, as interpreted and applied by the Borough, does not tax on-premises signs which express opinions and political views. *See* note 13, *supra.*

**16.** Given our disposition of this case, we need not address the Borough's contention that several of the Sign Owners do not have standing to challenge the Ordinance.