FREE SPEECH, LLC, Sweet Lucy's Limited Liability Company and Heritage for the Blind, Inc., Appellants

v.

The CITY OF PHILADELPHIA, Robert D. Solvibile, in his capacity as Acting Commissioner of the Department of Licenses and Inspections of the City of Philadelphia and Nancy Kammerdeiner, in her official capacity as Commissioner of the Department of Revenue of the City of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 2005.

Decided Oct. 14, 2005.

Daniel Segal, Philadelphia, for appellant, Sweet Lucy's Limited Liability Company.

Joseph C. Bright, Philadelphia, for appellant, Heritage for the Blind, Inc.

Elise Bruhl, Philadelphia, for appellees.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Free Speech, LLC, Sweet Lucy's Limited Liability Company and Heritage for the Blind, Inc. (hereafter Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), denying their motion for special and preliminary injunction. We now affirm.

Appellant Free Speech is a limited liability company committed to protecting the freedom of speech in the media, including the medium of billboards. Members of Appellant Free Speech include Clear Channel Outdoor, Inc., Viacom Outdoor, Inc. and H.A. Steen Advertising, Inc., each of which owns networks of billboard structures in the city of Philadelphia (the City) and sells space to various persons and entities that disseminate both commercial and noncommercial messages to the public. Appellant Sweet Lucy's is a restaurant in the City, d/b/a Sweet Lucy's Smokehouse, that routinely advertises on billboards located throughout the City. Appellant Heritage for the Blind is a non-profit organization that purchases, rents or licenses billboard space in the City to disseminate its community-oriented messages and campaigns.

On June 15, 2005, the City enacted an ordinance, now codified at Section 19–3400 of the Philadelphia Code (the Code), which created a special excise tax on outdoor advertising transactions (hereafter referred to as the billboard excise tax). Specifically, the ordinance imposed a tax of 7% of the consideration paid for the purchase, rental or licensing of space on any building, parcel or sign support structure located in the City for the purpose of installing, placing or maintaining an outdoor advertising sign. This new billboard excise tax became effective on July 1, 2005, despite the failure of the City to enact any rules or regulations relating to the levy and collection of said tax. Section 19–3402 of the Code requires the outdoor advertising company, including the billboard owners, to collect this new tax at the time the purchase price is paid and remit the same to the City. *See* R.R. at 32a. If the outdoor advertising company fails to collect the tax then it is liable for the same, plus penalties and interest. *See* Section 19–3403(2) of the Code, R.R. at 32a.

To effectuate this new tax, the City also amended the definitions of certain terms in Section 9–602 of the Code. Section 9–602(2)(e) defines an "outdoor advertising sign" as a "non-accessory sign." (R.R. at 36a). Section 9–602(c) in turn defines a "non-accessory sign" as "a sign which directs attention to a business, industry, profession, commodity, service organization, activity, institution, business, product or entertainment neither sold, located nor offered upon the property where the sign is situated." *Id.* To the contrary, Section 9–602(2)(a) of the Code defines an "accessory sign" as "a sign which directs attention to information, identification, or advertisements strictly incidental to a lawful use of the premises on which it is located. This includes signs or devices indicating the business transacted, services rendered, goods sold, or produced on the premises; and, name or emblem of a person, firm, institution, organization or activity occupying the premises." *Id.*

On June 23, 2005, Appellants filed a complaint in equity with the trial court seeking an order preliminarily, specially and permanently enjoining the City, the acting commissioner of the City's Department of Licenses and Inspections and the commissioner of the City's Department of Revenue from enforcing the billboard excise tax. In this complaint, the City also sought an order declaring that the new tax violates the First and Fourteenth Amendments to the U.S. Constitution as well as Article I, Section 7 and Article VIII, Section 1 of the PA Constitution and that the new tax is preempted by the laws of this Commonwealth and the City.

At the same time, Appellants filed a motion for special and preliminary injunction with the trial court seeking to enjoin enforcement of the tax. The City filed an answer to this motion on June 28, 2005,

and a hearing was held before the trial court on June 29, 2005. However, by order dated July 7, 2005, the trial court denied Appellants' motion. The trial court issued a memorandum in support of its order noting the strong presumption of constitutionality afforded to legislation and Appellants' threshold burden of establishing a likelihood of prevailing on the merits. Citing to the reasoning of this Court finding a similar statute constitutional in *Adams Outdoor Advertising v. Borough of Stroudsburg*, 667 A.2d 21 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 544 Pa. 661, 676 A.2d 1201 (1996), the trial court indicated that it was not persuaded that Appellants had met even their threshold burden in this case.

Further, the trial court indicated that Appellants had failed to demonstrate the additional requirement of immediate irreparable harm. In this regard, the trial court noted that the ordinance is about money and that any harm can be compensated in an action at law. Appellants thereafter filed a notice of appeal with the trial court. In addition, on July 11, 2005, Appellants filed a motion with this Court to expedite its appeal. By order dated July 13, 2005, we granted Appellants' motion to expedite.

On appeal,[1] Appellants argue that the trial court erred as a matter of law in denying its motion for special and preliminary injunction. We disagree.

The burden is on the party seeking injunctive relief to establish the essential prerequisites necessary for the grant of such relief. *Warehime v. Warehime*, 580 Pa. 201, 860 A.2d 41 (2004); *Summit Towne Centre, Inc.* These essential prerequisites require a party to show the following:

(1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(4) that the activity it seeks to restrain is actionable, its right to relief is clear and the wrong is manifest, or, in other words, that it is likely to prevail on the merits;

(5) that the injunction it seeks is reasonably suited to abate the offending activity; and

(6) that a preliminary injunction will not adversely affect the public interest.

*Id.*

In their brief to this Court, Appellants primarily focus their argument on the first and fourth elements above.[2] We begin

---

1. With respect to our scope of review of an order granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but instead we will examine the record only to determine if there were any apparently reasonable grounds for the action of the court below. *James T. O'Hara, Inc. v. Borough of Moosic*, 148 Pa.Cmwlth. 535, 611 A.2d 1332 (Pa.Cmwlth.1992). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we in-

terfere with the decision of the [trial court]." *Roberts v. Board of Directors of the School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). Further, a denial of a request for injunctive relief is proper where any one of the essential prerequisites for obtaining a preliminary injunction is not satisfied. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995 (2003).

2. Presumably, Appellants focus their attention on these elements as the trial court also fo-

with the latter. Appellants contend that they presented sufficient evidence before the trial court establishing a likelihood that they would prevail on the merits of their claim. More specifically, Appellants contend that they would prevail on the merits as the billboard excise tax targets a select group, is not narrowly tailored, places content-based burdens on speech, violates Article VIII, Section 1 (the Uniformity Clause) of the Pennsylvania Constitution and is preempted by the City's business privilege tax and/or the Commonwealth's sales and use tax.

■■■ The primary purpose of taxes is always to raise money for the taxing authority. *Adams Outdoor Advertising.* The taxing authority possesses wide discretion regarding matters of taxation, with this discretion being limited by the requirements of the Equal Protection and Uniformity Clauses of the United States and Pennsylvania Constitutions.[3] *Conley Motor Inns, Inc. v. Township of Penn,* 728 A.2d 1012 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 560 Pa. 731, 745 A.2d 1225 (1999); *Magazine Publishers of America v. Department of Revenue,* 539 Pa. 563, 654 A.2d 519 (1995); *Adams Outdoor Advertising.* Legislation that imposes a tax is presumed to be constitutional, and the taxpayer challenging that legislation bears the burden of proving that it clearly, palpably and plainly violates the constitution. *Id.* Any doubts regarding the constitutionality of tax legislation should be resolved in favor of upholding its constitutionality. *Id.*

■■■ In the context of tax legislation, equal protection and uniformity do not require absolute equality and perfect uniformity in the imposition of a tax. *Conley Motor Inns; Adams Outdoor Advertising.* However, the legislation cannot treat similarly situated entities differently. *Id.* If a tax is imposed only when an entity falls within a certain class, the legislative body must have a reasonable basis for singling out that category, i.e., the classification must be non-arbitrary, as well as reasonable and just.[4] *Adams Outdoor Advertising; Brown.* Absent a real distinction between the classes in tax legislation, the legislation will be deemed unconstitutional. *Adams Outdoor Advertising.*

■■■ With respect to content-based restrictions on speech, a tax or fee on speech, the amount of which depends upon the content of that speech, is constitutionally suspect. *Adams Outdoor Advertising.* Such a tax will be found to be constitutional only if the taxing authority shows that it is necessary to serve a compelling interest and is narrowly drawn to achieve that end. *Id.* In determining whether a governmental regulation of speech is content based, our principal inquiry is whether the government adopted the regulation because of its disagreement with the message to be conveyed by the speech. *Id.*

■■■ In other words, the government's purpose in enacting the legislation is the Court's controlling consideration, and if

---

cused on these elements in denying their motion for special and preliminary injunction.

3. For purposes of constitutional challenges to a taxation scheme, both the Equal Protection Clause and the Uniformity Clause require the same analysis. *Brown v. Department of Revenue,* 155 Pa.Cmwlth. 197, 624 A.2d 795 (1993), *affirmed,* 536 Pa. 543, 640 A.2d 412 (1994).

4. Indeed, our Unites States Supreme Court has stated that taxing First Amendment speakers offends the constitution when it singles out the press, targets a small group of speakers or discriminates on the basis of the content of the speech. *Leathers v. Medlock,* 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991).

that purpose is unrelated to the content of the speech, then the regulation will be deemed to be content neutral. If, on the other hand, the purpose behind the regulation is related to the content of the speech, or if, in determining whether the regulation applies, one must look to the content of the speech, then, absent a compelling reason offered by the government, it will be found to be unconstitutional. *Id.; see also Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987).

In rendering its decision in this case, the trial court relied heavily upon our previous decision in *Adams Outdoor Advertising,* wherein the trial court indicated we found a similar statute constitutional. Nevertheless, Appellants contend that the trial court's reliance on this case was in error and was misplaced. In *Adams Outdoor Advertising,* we were called upon to review the constitutionality of a municipal ordinance requiring property owners to pay an annual tax for off-premises signs, including outdoor advertising signs such as billboards. The ordinance expressly exempted on-premises signs, such as business signs, construction signs, directory signs, real estate signs and political signs from the taxing requirements.

A group of sign owners challenged the ordinance alleging that the tax imposed violated the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution since it was imposed against off-premises signs but was not imposed against on-premises signs, thereby only affecting a small group of taxpayers. In addition, the sign owners alleged that the tax violated their right to free speech as it was content-based, i.e., one was required to look to the content of the sign to determine whether it related to an activity that occurred on the premises to decide if the sign was taxable or tax exempt. Moreover, the sign owners alleged that the tax violated their right to free speech as it disadvantaged non-commercial speech.

We rejected each of these allegations. With respect to the first allegation, we indicated that there were real and non-arbitrary distinctions between off-premises and on-premises signs which permitted the municipality to classify the two differently for taxation purposes. Specifically, we noted that off-premises signs were of considerable size and bore no direct relationship to the activities on the property on which they were located, that the messages contained on such signs generally changed on a relatively frequent basis and through leasing and rental fees, such signs had the capacity to generate income, i.e., they were a business in and of themselves.

With respect to the second allegation, we indicated that the ordinance imposed the tax on all off-premises signs, regardless of their content. We noted the considerations expressed by the municipality in adopting the ordinance, including the increased traffic, vehicular safety, aesthetics and the concomitant costs that benefit the owners of these off-premises signs. We also noted the lack of any evidence that the municipality adopted the ordinance because it disagreed with the messages conveyed on off-premises signs. We went on to describe the ordinance at issue as content-neutral as the tax was mechanically applied to all off-premises signs and no on-premises signs.

With respect to the third allegation, the sign owners specifically alleged infringement of their right to free speech because the ordinance imposed a tax on off-premises signs with non-commercial messages while it exempted various types of commercial speech included in on-premises signs. We began addressing this allegation by noting that our United States Su-

preme Court had previously recognized the greater degree of protection afforded to non-commercial speech than to commercial speech under the First Amendment. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). We proceeded to distinguish the Court's decision in *Metromedia, Inc.* as that case involved a regulation of billboards via the prohibition of off-premises signs, not the imposition of a tax on such a sign. We noted that the municipality in *Adams Outdoor Advertising* never sought to ban off-premises signs. We also reiterated the appropriate reasons proffered by the municipality for enacting the ordinance and imposing the tax.[5]

We agree with the trial court that our previous decision in *Adams Outdoor Advertising* appears to be controlling as to the majority of the issues raised by Appellants herein, i.e., issues regarding whether or not the billboard excise tax targets a select group, whether the ordinance is narrowly tailored, whether the ordinance places content-based burdens on speech and whether the ordinance and tax violates the Uniformity Clause of the Pennsylvania Constitution.

Admittedly, there are factual distinctions between the present case and *Adams*

*Outdoor Advertising,* e.g., the tax in the latter applied to sign owners and the tax in the present case is applied to sign lessees. Appellants note this distinction in support of their argument that our decision in *Adams Outdoor Advertising* is not applicable here. Appellants also set forth other reasons why the latter is not applicable, including that the plaintiffs in *Adams Outdoor Advertising* never raised issues of free speech as the ordinance in that case applied to sign owners and not sign lessees who actually disseminate a message, that the billboard excise tax here is not imposed on all off-premises signs and that certain exempted categories are content-based.

While we do not question the legitimacy of the arguments set forth by Appellants in these regards, these arguments require the trial court to engage in further fact finding and analysis. Nevertheless, as the record presently exists, we cannot say that Appellants presented sufficient evidence establishing a likelihood that they would prevail on these arguments. As appellants failed to satisfy a requisite element, we also cannot say that the trial court erred as a matter of law in denying Appellants' motion for special and preliminary injunction.[6]

5. The sign owners in *Adams Outdoor Advertising* raised an additional allegation that the ordinance at issue violated their First Amendment right to free speech by unconstitutionally penalizing select members of the print media, i.e., off-premises signs. However, we rejected this argument indicating that the tax was not directed at suppressing any particular ideas, the tax was unlikely to stifle the free exchange of opinions and the tax did *not* single out *one* small group of off-premises signs but, instead, applied to all off-premises signs.

6. In the course of this argument, Appellants also raise an issue as to whether the billboard excise tax is preempted by the City's business privilege tax and/or the Commonwealth's

sales and use tax. With respect to the City's business privilege tax, the billboard excise tax is imposed on all *individuals or businesses* who purchase, rent or license an outdoor advertising sign, regardless of whether or not that individual or business does business in the City or is in business at all. Hence, we fail to see how the billboard excise tax is preempted by this tax. With respect to the Commonwealth's sales and use tax, said tax is only imposed upon the sale or use of tangible personal property or services. *See* Section 202 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202. As the purchase, rental or lease of space on an outdoor advertising sign does not fall within the definition of tangible per-

Accordingly, the order of the trial court is affirmed.[7]

### ORDER

AND NOW, this 14th day of October, 2005, the order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

**A.P., Petitioner**

v.

sonal property under Section 201(m) of the Code, 72 P.S. § 7201(m), the sales and use tax provisions do not apply. Hence, we again fail to see how the billboard excise tax is preempted by this tax.

7. As we have concluded above that Appellants failed to satisfy one of the requisite elements for the grant of a preliminary injunction, thereby necessitating the denial of their motion by the trial court, we need not address Appellants' arguments concerning any of the remaining requisite elements.