**BEAVER COUNTY, by and through the BEAVER COUNTY BOARD OF COMMISSIONERS**

v.

**Beaver County Sheriff, George DAVID**

v.

**Beaver County Deputy Sheriffs Association, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2013.
Decided Jan. 7, 2014.

Eric C. Stoltenberg, Pittsburgh, for appellant.

Bernard J. Rabik, Beaver, for appellees Beaver County and Beaver County Board of Commissioners.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

In this interlocutory appeal as of right, the Beaver County Deputy Sheriffs Association (Association) appeals from an Order of the Court of Common Pleas of Beaver County (trial court) that granted a motion for preliminary injunction on behalf of Beaver County, acting through its Board of Commissioners (Board) (collectively, the County).[1] The preliminary injunction enjoined the County Sheriff, George David (Sheriff), and deputy sheriffs from performing official services or official duties, including providing security services for persons, associations, or corporations such as local department stores or movie theaters. The injunction, however, did not apply to services performed for other government units or school district events, such as proms, dances, or sports events. Essentially, the trial court determined that the County is likely to prevail on the issue of whether the deputy sheriffs' extra duty assignments for outside entities violated the prohibition in Section 1210(a) of The County Code[2] against performing official duties or official services for any outside private persons, associations, or corporations. On appeal, the Association argues that the trial court erred in this determination.[3] Discerning no error, we affirm.

The undisputed facts in this matter are as follows. The Sheriff's Department employs 19 full-time and 26 part-time deputies. (Hr'g Tr. at 161, R.R. at 461a.) A full-time deputy sheriff's shift is 8 hours per day, 40 hours per week. (Hr'g Tr. at 161, R.R. at 461a.) The County and Association are parties to a collective bargaining agreement (CBA). (Hr'g Tr. at 164, R.R. at 464a.) Article V, Section 5.3(b) of the CBA, which governs extra-duty overtime opportunities, provides: "[e]xtra work details for outside agencies, which are reimbursed to the County, shall continue to be distributed among Deputy Sheriffs as in the past." (CBA at 7, R.R. at 168a.) This provision has been in the CBA for 11 years and a majority of the deputy sheriffs earn extra income from these assignments. (Hr'g Tr. at 165, R.R. at 465a.)

---

1. The Association filed its appeal pursuant to Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure, which provides that an order granting an injunction is appealable as of right. Pa. R.A.P. 311(a)(4).

2. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1210(a).

3. By Order of this Court dated August 29, 2013, the Sheriff was precluded from filing a brief and participating in oral argument.

The extra duty is managed entirely through the Sheriff's Department. (Hr'g Tr. at 166, 170, R.R. at 466a, 470a.) An outside agency calls the Sheriff's Department to request the deputy sheriffs' services. (Hr'g Tr. at 166, R.R. at 466a.) A sign-up sheet is then prepared and the deputy sheriffs place their names on the sheet for consideration. (Hr'g Tr. at 166, R.R. at 466a; Ex. E—Inter–Office Memo Extra Duty Details Notice, R.R. at 274a–76a.) Both full-time and part-time deputy sheriffs are eligible for each opportunity to perform an extra duty. (Hr'g Tr. at 167, R.R. at 467a.) The additional pay the deputy sheriffs receive is a significant part of their overall compensation. (Hr'g Tr. at 174–75, R.R. at 474a–75a.)

The deputy sheriffs work these assignments in full uniform and utilize marked Sheriff's Department vehicles. (Hr'g Tr. at 168, 180, R.R. at 468a, 480a.) They carry out various law enforcement activities, including making arrests. (Hr'g Tr. at 172, R.R. at 472a.) However, while these functions are performed outside their regular shifts, the deputy sheriffs consider themselves "on-duty" because they have "sheriff powers" while performing outside work. (Hr'g Tr. at 166, 193, R.R. at 466a, 494a.)

The outside work details include, but are not limited to, providing security services for the Cinemark Theater; Wal–Mart; Boscov's; the Hookstown Fair; and for school district functions, including proms, dances, and sports events. (Hr'g Tr. at 167, 183, 188, R.R. at 467a, 483a, 489a; Ex. F—Beaver County Sheriff's Office Outside Activities and Assistance, R.R. at 277a–79a.) The County pays the deputy sheriffs their regular overtime rate for these assignments. (Hr'g Tr. at 169, R.R. at 469a.) The Sheriff's Department invoices the outside entity at the overtime rate the County paid the deputy sheriffs. (Hr'g Tr.

at 83, R.R. at 383a.) The deputy sheriffs are not otherwise compensated by the outside entity. (Hr'g Tr. at 81, 169, R.R. at 381a, 469a.) However, the amount charged to the outside entities does not cover the entire amount the County is obligated to pay as a result of the deputy sheriffs' time spent performing the extra duty. (Hr'g Tr. at 65–68, 206, R.R. at 365a–68a, 507a.)

In the Fall of 2012, following an audit of the Sheriff's Department, the County Controller prepared a report expressing concern about the outside assignments for the years 2010–2012. (*See* Office of the Controller, Review of Financial Operations, Office of the Sheriff of Beaver County, Pennsylvania, January 1, 2010, through September 30, 2012 (Controller's Report), R.R. at 154a–60a.) Among other problems, the Controller's Report noted that some of the services were billed at less than the cost of providing them, resulting in a loss to taxpayers. (Controller's Report at 1, R.R. at 155a.) In addition, many of these services were provided without written contracts setting the terms. (Controller's Report at 4, R.R. at 158a.)

Most relevant here, the Controller's Report noted that Section 1210 of The County Code, 16 P.S. § 1210, titled "[p]rivate services, gifts and payments, contracts, prohibited," actually prohibited the deputy sheriffs from providing such services to outside parties. (Controller's Report at 3–4, R.R. at 157a–58a.) In addition, the County Solicitor rendered a legal opinion that the deputy sheriffs' outside assignments violated Section 1210(a) of The County Code. (P.Ex. 1—Letter from County Solicitor to County Sheriff (August 29, 2012), R.R. at 147a–48a.) In its entirety, Section 1210 provides:

(a) *No sheriff, deputy sheriff, detective or other county police officer whatsoever, shall perform, directly or indirectly,*

*any official services or official duties for any person, association or corporation, or receive, directly or indirectly, any compensation, gifts or gratuities from any person, association or corporation during the period of his official services.* Nothing herein contained shall prohibit such officers from serving writs and other legal process as authorized by law. Any compensation payable to any such officer for official duties and services shall be paid only out of the proper county, or other public funds, to the amount and in the manner prescribed by law. Gifts, donations, and gratuities of any nature whatsoever made by any person, association or corporation to the county or to any official or agent thereof, shall not constitute public funds within the meaning of this section.

(b) No county, or any official or agent thereof, shall accept as a gratuity, gift or donation any arms, ammunition, military supplies, tear gas or equipment, or supplies or articles of a similar character from, nor shall any such gratuity, gift or donation be made by any person, association or corporation.

(c) Any contract or agreement, whatsoever, made in violation of the provisions of this section, shall be utterly void and of no effect, in law or in equity, and is hereby declared to be contrary to public policy.

(d) Notwithstanding any other provision of this section, unless otherwise prohibited by resolution or ordinance of the county, *an individual who is employed as a sheriff, deputy sheriff,* detective or other county police officer *may engage in outside employment, including employment in security, during a period in which the individual is not scheduled to perform nor performing duty as a county employe.* The county is not liable for any damage resulting from an act

of an individual acting under this subsection.

16 P.S. § 1210 (emphasis added).

In September 2012, the County filed a complaint in equity against the Sheriff seeking to enjoin him from assigning deputy sheriffs to perform extra duties in violation of Section 1210(a). (Complaint, R.R. at 2a–17a.) The County also averred that the Sheriff violated Section 1801(a) of The County Code, 16 P.S. § 1801(a), which provides, in part, that the Board is the sole contractor for the County. (Complaint ¶¶ 4–5, R.R. at 5a.) In particular, the County averred that the performance of the extra duty needed a written contract between the County and the recipients of the services. (Complaint ¶¶ 5, 14, R.R. at 5a, 7a–8a.) The County also filed a motion for a preliminary injunction (Motion) alleging that the Sheriff continued to violate Sections 1210(a) and 1801(a) of The County Code. (Motion for Preliminary Injunction, R.R. at 19a–21a.) Thereafter, the trial court, despite the County's objection, permitted the Association to intervene. (Trial Ct. Order, January 10, 2013, R.R. at 94a.)

The trial court held an evidentiary hearing on the County's Motion on January 16, 2013, at which the parties presented witness testimony and submitted documentary evidence. Ultimately, the trial court determined it appeared very likely the County will prevail, at least in part, concerning the alleged violation of Section 1210(a) of The County Code. (Trial Ct. Op. at 8.) However, the trial court found it unlikely the County will prevail on its claim that the Sheriff Department's extra duty assignments violated Section 1801(a) of The County Code. In its opinion in support of its Order granting the preliminary injunction, the trial court stated:

Looking at this issue from the narrow perspective of the corporations and asso-

ciations that have been taking advantage of the availability of sheriff services it is easy to conclude that they will be inconvenienced by their discontinuance. Nonetheless, the record is clear that the sheriff and his deputies are acting in contravention of [Section] 1210(a) of [T]he County Code. They are directly performing official services and official duties for persons, associations and corporations in violation of the plain language of the statute. With a similar result, they are indirectly receiving compensation from associations or corporations during their period of official service. In such circumstances the public's interest lies in the enforcement of the duly adopted statutes of the Commonwealth. To conclude otherwise would be to allow an elected official to substitute his or her view of the public's interest for that of the legislature.

(Trial Ct. Op. at 10–11.) Accordingly, the trial court granted a preliminary injunction enjoining the Sheriff and deputy sheriffs as follows:

1. The Sheriff and deputy sheriffs [of] Beaver County shall refrain from performing, directly or indirectly, any official services or official duties for any person, association or corporation, during a period of official service as a sheriff or a sheriff's deputy.

2. The Sheriff and deputy sheriffs [of] Beaver County shall not receive, directly or indirectly, any compensation, gifts or gratuities from any person, association or corporation during a period of official service as a sheriff or a sheriff's deputy.

3. The prohibition does not apply to agreements with other units of govern-

ment, including but not limited to public school districts, entered into by the County of Beaver providing for the reimbursement of costs incurred as a result of the assignment of deputies and as otherwise consistent with the requirements of law.

(Trial Ct. Order.) The Association now appeals from the trial court's Order granting the preliminary injunction.[4]

■ Appellate review of a trial court order granting or denying preliminary injunctive relief is highly deferential. *Warehime v. Warehime,* 580 Pa. 201, 209, 860 A.2d 41, 46 (2004). As such, "we will not inquire into the merits of the controversy, but instead we will examine the record only to determine if there were any apparently reasonable grounds for the action of the court below." *Free Speech, LLC v. City of Philadelphia,* 884 A.2d 966, 970 n. 1 (Pa.Cmwlth.2005). " 'Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].' " *Id.* (quoting *Roberts v. Board of Directors of the School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)).

■ This Court has stated that the essential prerequisites for granting injunctive relief are:

(1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substan-

---

4. The Association is not challenging paragraph 3 of the trial court's Order stating that the preliminary injunction "does not apply to agreements with other units of government, including but not limited to public school districts, entered into by the County of Beaver providing for the reimbursement of costs incurred as a result of the assignment of deputies and as otherwise consistent with the requirements of law." (Trial Ct. Order.)

tially harm other interested parties in the proceedings;

(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(4) that the activity it seeks to restrain is actionable, its right to relief is clear and the wrong is manifest, or, in other words, that it is likely to prevail on the merits;

(5) that the injunction it seeks is reasonably suited to abate the offending activity; and

(6) that a preliminary injunction will not adversely affect the public interest.

*Id.* at 970. "For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." *County of Allegheny v. Commonwealth,* 518 Pa. 556, 560, 544 A.2d 1305, 1307 (1988). "The burden is on the party who requested preliminary injunctive relief." *Warehime,* 580 Pa. at 210, 860 A.2d at 47.

In support of this appeal, the Association first contends that the trial court erred in determining the County is likely to prevail on the merits; specifically, that Section 1210(a) of The County Code prohibits deputy sheriffs from performing extra duty assignments, including law enforcement or security work, for outside persons, associations or corporations. The Association argues that performance by the deputy sheriffs of the extra duty at issue here does not violate Section 1210 of The County Code. Thus, the County has not suffered irreparable harm for purposes of a preliminary injunction.

The Association asserts a proper analysis of Section 1210 leads to the conclusion that the manner in which the deputy sheriffs perform the extra duty assignments falls outside of any express statutory restrictions. In order for something to be express, it must be clearly and unequivocally defined in the statute. Here, the Association posits, the deputy sheriffs would be in violation of Section 1210(a) if it prohibited them from performing any services for entities other than the County at any time. However, no such statutory language exists. The Association points out that Section 1210(d) of The County Code provides that a deputy sheriff "may engage in outside work activity, including employment in security, during a period in which the individual is not scheduled to perform nor performing duty as a county employe." 16 P.S. § 1210(d). The Association asserts that Section 1210(d) certainly permits a deputy sheriff to perform security work for an outside entity at any time he is not working as a County employee. The Association contends that the record clearly shows that the work performed for outside agencies constitutes "extra-work" done after completion of a deputy sheriff's normal County services. In other words, when read as a whole, Section 1210 precludes the deputy sheriffs from performing their County duties while working for and deriving income from separate entities. However, the Association contends, the deputy sheriffs are neither performing official services for persons, associations, or corporations during the period in which they are performing duties for the County nor are the deputy sheriffs being paid by both the County and the outside entities when they perform services for these other entities. Therefore, because the outside entities in this case pay the full cost of the deputy sheriffs during the off-duty hours, no double-dipping occurs. The Association asserts further that the County was well aware of the extra duty assignments and it ratified these contracts by the affirmative action of billing and receiving payment from the outside entities for the deputy

sheriffs' services. Thus, the Association argues that the trial court erred in determining that the County is likely to prevail on a claim that the deputy sheriff's extra work assignments expressly violate Section 1210(a) of The County Code.

Upon review, we conclude that reasonable grounds exist to support the trial court's issuance of the preliminary injunction in this case. First, the County is likely to prevail on the issue of whether the conduct to be restrained, the Sheriff Department's assignment of the extra duty work assignments to the deputy sheriffs, violates Section 1210(a)'s prohibition against providing official services to "any person, association or corporation." 16 P.S. § 1210(a). In this situation, the deputy sheriffs have not personally secured and engaged in outside employment for a private entity during a period of time in which the individual deputy sheriff "is not scheduled to perform nor performing duty as a county employe" within the meaning of Section 1210(d) of The County Code. 16 P.S. § 1210(d). Rather, the Sheriff's Department assigns deputy sheriffs to law enforcement duties and security services for private corporations such as Cinemark Theater, Wal–Mart, Boscov's, and the Hookstown Fair. The deputy sheriffs perform these services in uniform, use the Sheriff Department's marked vehicles, and the Sheriff's Department pays the deputy sheriffs at their regular overtime rate. The trial court observed:

> The [Association], while acknowledging that deputies are performing official services for persons, associations and corporations, argues that the statute is not being violated because those official services are not occurring during a "period of his official services" as specified in section 1210(a).... The [Association] defines the period of official services as the time during which a deputy is regularly scheduled to work for the

[C]ounty. The [Association's] conclusion is based in part on the fact that the phrase "period of official services" is not directly defined in the statute and in part on the language in 1210(d) to the effect that a deputy is entitled to work "outside employment" during the period he is "not scheduled to perform nor performing duty as [a] [C]ounty employee".

> While the [Association] points to a significant provision of the statute[,] the Court rejects the notion that deputies are not working as [C]ounty employees when assigned to work for the entities in question. The deputies are assigned to work on the various security details through a system that is entirely controlled and managed by the Sheriff's [D]epartment. They use [C]ounty vehicles and wear their official uniforms. They perform, by everyone's admission, official services and are paid by the [County] through the normal payroll system, at a rate determined by their [C]ounty pay grade and where applicable, the [C]ounty's overtime policy. Finally, the manner in which these extra work details are assigned is the subject of a provision of the [CBA], which by its very nature serves to define the relationship of the deputies and their employer while on the job.

(Trial Ct. Op. at 11–12.)

██ The trial court determined that the deputy sheriffs were performing official services solely for outside entities, including private associations and corporations in violation of Section 1210(a). The trial court further noted "[t]he fact that the County[,] through the efforts of the Sheriff[,] has chosen to charge money for these 'overtime' assignments doesn't alter the employment status of the deputies or[,] for that matter, the personnel in the [S]heriff's

office who man[a]ge the extra work assignment program during the normal course of business." (Trial Ct. Op. at 13.) To that end, Section 1210(a) prohibits a sheriff or deputy sheriff from receiving, "directly or indirectly, any compensation, gifts or gratuities from any person, association or corporation during the period of his official services." 16 P.S. § 1210(a). This rationale provides "apparently reasonable grounds" for the trial court's decision that the County is likely to prevail on the issue of whether the extra duty assignments violate The County Code. Moreover, " '[w]hen the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury.' " *Commonwealth v. Coward*, 489 Pa. 327, 341, 414 A.2d 91, 98 (1980) (quoting *Pennsylvania Public Utility Commission v. Israel* 356 Pa. 400, 406, 52 A.2d 317, 321 (1947)); *see also Council 13, American Federation of State, County and Municipal Employees, AFL–CIO v. Casey*, 141 Pa.Cmwlth. 199, 595 A.2d 670, 674 (1991) (holding that a violation of an express provision of a statute is per se irreparable harm for purposes of a preliminary injunction). Thus, the alleged violation of Section 1210(a) of The County Code by the Sheriff would constitute irreparable harm to the County.

The Association next contends that the injunction adversely affects the public interest. The Association asserts that the deputy sheriffs perform law enforcement and security services as part of their extra duty assignments. This includes preventing underage drinking and responding to fighting at fairs and other events. The Association contends that there is no other agency available to provide these services at these events; therefore, the Association maintains that the

trial court erred in granting the preliminary injunction.

We conclude that the injunction is reasonably suited to abate the offending conduct and it does not adversely affect the public interest. The trial court did not extend the injunction to the performance of official duties for other government units, including county agencies, schools, and school districts. Further, the trial court noted that "the amount charged [to] the entities receiving service does not cover the entire cost of the amount the [C]ounty is obligated to pay as a result of a deputy's time on the job." (Trial Ct. Op. at 4.) Given the costs of overtime, workers' compensation, and pension issues, a greater injury to County taxpayers would result from the refusal of the injunction.

For the foregoing reasons, we conclude that the trial court's grant of the preliminary injunction is supported by apparently reasonable grounds. Accordingly, the trial court's Order is affirmed.

### *ORDER*

**NOW,** January 7, 2014, the Order of the Court of Common Pleas of Beaver County entered in the above-captioned matter is hereby **AFFIRMED.**

DISSENTING OPINION BY Judge LEAVITT.

A preliminary injunction provides relief ancillary to an underlying permanent injunction proceeding. Its purpose is to preserve the *status quo* pending the outcome of the request for a permanent injunction. *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Company, Inc.*, 893 A.2d 196, 204 (Pa. Cmwlth.2006). The trial court's preliminary injunction upsets the *status quo,* which was established in the collective bargaining agreement between the County and the Beaver County Deputy Sheriff's

Association (Union) and has existed for many years. The trial court has ordered this extraordinary relief on the basis of its interpretation of an ambiguous provision in Section 1210(a) of The County Code.[1] Even if one agrees with the trial court's interpretation of this statutory provision, it cannot be said that the legal rights of the County are clear, which is a prerequisite to a preliminary injunction. Because the preliminary injunction does not preserve the *status quo* pending a decision on the request for a permanent injunction, I dissent, respectfully, from the majority's decision.

Central to the controversy is the meaning of Section 1210(a) of The County Code, which prohibits a deputy sheriff from being compensated twice for the performance of his "official duties." It states:

(a) *No sheriff, deputy sheriff detective or other county police officer whatsoever, shall perform, directly or indirectly, any official services or official duties for any person, association or corporation, or receive, directly or indirectly, any compensation, gifts or gratuities from any person, association or corporation during the period of his official services.* Nothing herein contained shall prohibit such officers from serving writs and other legal process as authorized by law. Any *compensation payable to any such officer for official duties and services shall be paid only out of the proper county, or other public funds,* to the amount and in the manner prescribed by law. *Gifts, donations, and gratuities of any nature whatsoever made by any person, association or corporation to the county or to any official or agent thereof, shall not constitute public funds within the meaning of this section.*

16 P.S. § 1210(a) (emphasis added). The Union construes Section 1210(a) as an ethics statute and places the emphasis on the final phrase of the first sentence, *i.e.,* the proscription on "any compensation, gifts or gratuities from any person, association or corporation *during the period of his official services.*" 16 P.S. § 1210(a) (emphasis added).

Here, deputy sheriffs are performing official duties for the County and are paid for that work by the County. The assignments for these duties are made by the Sheriff and the County invoices the "person" who has requested the Sheriff's office to provide services after the close of the deputy sheriff's regular shift, *i.e.,* a time not "during the period of [the deputy sheriff's] official services." 16 P.S. § 1210(a). I agree with the Union that the purpose of Section 1210(a) is to prohibit a deputy sheriff from receiving double compensation for the same service, not to proscribe deputy sheriffs from providing official services after their regularly scheduled shift is over.

The trial court found that the deputy sheriffs were performing security services.[2] It is not clear what it meant by "security services." Sheriffs are "peacekeeping" officers, and this is what sheriffs have been doing since the Middle Ages. Sheriffs do not have the power to investigate crime, but they hold the "common law arrest powers" to respond to "in-presence breaches of the peace or felonies." *Commonwealth v. Marconi,* —— Pa. ——, ——, 64 A.3d 1036, 1043 (2013). The presence of a deputy sheriff at a shopping mall during the busy holiday shopping season helps keep the peace. It may be enough to stymie a luxury car-jacking gang oper-

---

1. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1210(a).

2. These are not private security services; there was no evidence that their services were those of a private bodyguard.

ating at a mall.[3] The public benefits, not just the mall owner, when a crime does not occur because of the peace-keeping presence of a sheriff.

The payment structure at issue was set in place by the County and is part of its collective bargaining agreement with the Union. Those persons requesting these additional "official duties" reimburse the County for the compensation of the extra hours. The County is concerned that the amount invoiced is not enough to cover wear and tear on the sheriff's vehicle and other potential losses. If the County is dissatisfied with the bargain, it should address that matter in a new contract. That the collective bargaining agreement needs to be amended does not warrant a preliminary injunction in the meantime.

If the harm warrants the issuance of a preliminary injunction, then there is a no principled basis to exempt the school districts from the terms of that injunction. The trial court did so on the theory that a "person" is a term that does not include government agencies, such as a school district. This Court has held the opposite. *See, e.g., Meyer v. Community College of Beaver County,* 30 A.3d 587, 596 (Pa. Cmwlth.2011).[4]

Finally, there is nothing untoward about a private person requesting the assistance of law enforcement officers, of every sort. Municipal police assist at funerals. Sheriff deputies have been found not to act outside their "official capacity" when called upon by employers to be present to escort fired employees from the workplace. *D'Errico v. DeFazio,* 763 A.2d 424, 431 (Pa.Super.2000).

For these reasons, I would vacate the preliminary injunction.

Judge LEADBETTER joins in this dissent.

---

**3.** http://www.nj.com/essex/index.ssf/2013/12/ short_hills_mall_shooting_mall_stopped_ using_essex_sheriffs_for_outside_security_ three_years_ago.html

**4.** The Pennsylvania Supreme Court granted allocatur on the issue of whether the definition of "person" includes a government entity. *Meyer v. Community College of Beaver County,* 616 Pa. 539, 51 A.3d 177 (2012).