S.O.L. Club, Inc., Appellant *v.* City of Williamsport, Appellee.

Argued February 5, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Ambrose R. Campana, Campana & Campana,* for appellant.

*Ronald C. Travis,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, March 17, 1982:

The appellant, S.O.L. Club, Inc., the owner of real estate in the City of Williamsport, has appealed from a judgment entered against it on a jury verdict for the amount of benefits assessed to its property by the city pursuant to the Business Improvement District Act of 1967, Act of November 30, 1967, P.L. 658, *as amended,* 53 P.S. §1551 *et seq.*

The Business Improvement District Act of 1967 empowers municipalities to establish business improvement districts, and to expend monies for needed improvements within such districts including but not limited to sidewalks, trees, shrubbery, pedestrian walks, water lines and similar amenities. The municipalities are empowered to assess the costs of the improvements upon properties benefited by several methods, one of which is by multiplying the total improvement cost by the ratio of the assessed value of the benefited property to the total assessed valuation of all benefited properties in the district. The City of Williamsport used the method just described in assessing the $1.7 million cost of making the improvements upon properties within its business improvement district.

At the trial, after the admission by stipulation of copies of pertinent ordinances, the city put in evidence a map showing the boundaries of the improvement district, evidence concerning the location of the appellant's property within the district, an exposition of the planning done or caused to be done by the city council prior to the making of the improvements, a description of the nature of the work done in the business improvement district and evidence that an assessment was made to appellant's property. The appellant adduced evidence at the trial tending to show that although certain amenities were constructed adjacent to or near its property, neither its property nor indeed any other in the business improvement district was enhanced in value or otherwise benefited by the improvements and that therefore its property was not benefited.

The trial judge at the close of evidence instructed the jury that the law presumes that a property which is the subject of a legal and properly adopted assessment ordinance has been benefited by the public improvement which was the occasion for the assessment; and that a property owner may contest the assessment, but in doing so has the burden to establish by a fair preponderance of the evidence that in fact no benefit has been conferred upon his property.

The appellant agrees that the judge's instruction would be correct if this was a case involving sewers or sidewalks but argues there should be no presumption of benefit where the assessment is for improvements made under the Business Improvement District Act of 1967 because the latter are made for aesthetic purposes. The appellant cites no authority for this proposition or indeed any fundamental rationale supporting it. Of course purely aesthetic public improvements may enhance the value of and otherwise benefit properties within their influence. Assuming, however, that the appellant's complaint is that since the improve-

ments of business districts under the Act are purposed to make the areas more attractive, rather than more healthful and safe, they promote interests not included within the police powers given municipalities and that therefore their costs cannot be recovered from property owners. In the case of *Berman v. Parker,* 348 U.S. 26 (1954), the Supreme Court upheld the power of Congress to condemn properties in the District of Columbia in order to develop a "better balanced and more attractive community" against the contention that such purpose was not embraced within public health, safety, morals and the general welfare. Mr. Justice DOUGLAS' now familiar response bears repeating here:

> The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way.

*Id.* at 33.

The appellant next argues that the method of assessing the properties used by Williamsport violates the uniformity clause of the Pennsylvania Constitution. However, the uniformity clause applies only to taxes and we are not here concerned with a tax to pay the ongoing expenses of government but a one-time charge for the costs of a public improvement. The principal authority cited by the appellant in support

of its thesis is *Manheim Township v. Workman,* 350 Pa. 168, 38 A.2d 273 (1944), which stands for just the contrary of its contention. There, the Pennsylvania Supreme Court struck down, as offending the uniformity clause, legislation authorizing an annual tax on property owners for the cost of maintaining street lights measured by the amounts of their property assessments for local tax purposes. Mr. Justice STERN went out of his way, however, to distinguish this annual tax for the maintenance of a continuing public service from benefits assessed to properties on account of the construction of public improvements, holding that the latter are not subject to the requirement of uniformity and therefore may be assessed to the properties benefited in the ratio their assessments for local taxes bear to the assessments of all benefited properties.

In short, the trial judge's charge was without error and the method by which the assessment was made is valid.

The appellant, however, raises a question concerning the admission of the evidence in the city's case which consideration we believe requires a new trial. The president of the city council, Dr. Pagano, was called as a witness for the city and he described the background of the planning, creation and costs of the business improvement district project. He was then examined by the city's trial counsel as follows:

Q. Doctor, when the assessment Ordinance was passed assessing the properties, what properties were assessed?

A. Those properties within the downtown Improvement District.

Q. And were those properties assessed because they were deemed benefited by City Council?

A. Yes, Sir.

Q. Was it City Council's understanding that only benefited properties could be assessed?

A. Yes.

Q. What was the understanding of City Council as to what would happen if a nonbenefited property was assessed and that property owner successfully contested or fought the assessment?

By Mr. Campana [appellant's counsel]: Objection, Your Honor.

By The Court: The Court will permit it, the objection is overruled, do you understand the question?

A. Yes.

Q. You may answer it?

A. That obviously the entire community of tax payers would pay for that part of the assessment.

By Mr. Campana: My objection is on the record?

By The Court: To the entire line.

By Mr. Campana: My accompanying motion also?

By The Court: And your accompanying motion also.

By Mr. Travis:

Q. What position did City Council take as to whether the tax payers at large would have to pay for any costs of the implementation of this District?

By Mr. Campana: Objection.

By The Court: That objection is sustained, reword your question.

By Mr. Travis:

A. When the concept of the Williamsport Business Improvement District was brought to

City Council, did City Council take a position as to who should pay for the costs of the implementation and construction of the Business Improvement District?

A. Yes, Sir.

Q. And what position did City Council take?

A. City Council felt strongly that only those benefited property owners, business people, would pay for the assessment, and not the entire tax paying entity of the City.

Surely, the "understanding" or "position" of members of city council with respect to who should pay for the deficiency if the owner of an assessed property were to be relieved of his burden was not relevant to any issue at trial, and the city's purpose in this line of questioning is beyond our divination, unless indeed it was to make an impression on the jury unfavorable to the appellant's claim to be relieved of assessment. We are told that some members of the jury were residents of Williamsport. The questions and responses reproduced certainly make the point that if a property within the business improvement district escaped the burden of assessment the taxpayers of Williamsport would pay the deficiency and the effect surely could have been that of instilling in the minds of some of the jurors the notion that they stood to lose personally by a verdict for the appellant. In *Finney v. G. C. Murphy Co.*, 400 Pa. 46, 161 A.2d 385 (1960), the Supreme Court ordered a new trial to a plaintiff who had suffered an adverse verdict in his suit for damages for injuries suffered in a mercantile establishment because counsel for the defendant argued to the jury that an unjustified recovery by the plaintiff would cause insurance premiums to rise and the cost of goods in the store to go up. We think the examination complained of was prejudicial. The suggestion that the error was

harmless because the testimony elicited only the obvious—that is, if an owner was relieved of assessment the deficiency would be paid by the tax paying public —is not convincing. Another reasonable possibility which comes to mind is that the deficiency might be allocated among the remaining owners of properties within the business improvement district, a possibility which was eliminated by the witnesses' testimony.

Judgment reversed; the record is remanded for a new trial.

ORDER

AND Now, this 17th day of March, 1982, the judgment appealed from is reversed and the record is remanded for a new trial.