571 A.2d 9

**Robert A. WHITE, M.D., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND and Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs and Commonwealth of Pennsylvania, State Board of Medical Education and Licensure, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1989.

Decided March 7, 1990.

F. Michael Friedman, Clouse, Arney, Pagano & Friedman, Media, for petitioner.

Jules S. Henshell, Sr. Deputy Atty. Gen., with him, John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for respondents.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

SMITH, Judge.

Robert A. White, M.D., (Petitioner) has filed a complaint in this Court's original jurisdiction against the named Commonwealth agencies (Respondents) seeking injunctive and declaratory relief. In his amended complaint, Petitioner asserts that in violation of the Pennsylvania Constitution he is forced to pay an annual surcharge to the Medical Professional Liability Catastrophe Loss Fund (Fund) in order to practice medicine in Pennsylvania. Petitioner seeks an order of this Court declaring Section 1301.701(e)(1) of the Health Care Services Malpractice Act[1] (Act) unconstitutional and an order permanently enjoining Respondents from interfering with Petitioner's right to practice medicine as a result of his failure to pay the surcharge.[2] Motions for

1. Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. § 1301.701(e)(1).

2. The original complaint also sought to enjoin the Fund from settling, over Petitioner's objection, a malpractice case in which Petitioner was

summary judgment have been filed by both Petitioner and Respondents. Petitioner's motion for summary judgment is denied and the motion for summary judgment filed by Respondents is granted.

## I

Petitioner is a licensed physician and surgeon under the laws of the Commonwealth specializing in obstetrics and gynecology. Section 1301.701(a) of the Act, 40 P.S. § 1301.701(a) requires every health care provider conducting over fifty percent of his or her practice in the Commonwealth to purchase and maintain malpractice insurance in specified amounts or to provide proof of self-insurance. In addition to the insurance requirements of Section 1301.-701(a), Section 1301.701(d) of the Act, 40 P.S. 1301.701(d), created a contingency fund to pay all awards, judgments and settlements for loss or damages against a participating health care provider resulting from any professional liability claim against the provider to the extent that the provider's share exceeds his or her basic coverage insurance. The Act further provides that no insurer or self-insurer providing coverage under the Act is liable for payment of any claim against the health care provider which exceeds the basic coverage insurance. Section 1301.701(b) of the Act, 40 P.S. § 1301.701(b).

The Fund is financed by the levying of an annual surcharge on all participating health care providers in a sum "necessary to produce an amount sufficient to reimburse the fund for the payment of all claims paid and expenses incurred during the preceding calendar year and to provide an amount necessary to maintain an additional $15,000,000." Section 1301.701(e)(1) of the Act. The surcharge is determined by the director of the Fund subject to prior approval of the Insurance Commissioner. Failure to comply with any of the provisions of Section 1301.701 results in suspen-

a defendant. After denial of his motion for preliminary injunction by this Court, Petitioner dropped this count.

sion or revocation of the health care provider's license by the State Board of Medical Education and Licensure.

Petitioner argues that the surcharge levied by the Fund is a revenue-producing tax measure rather than a license fee or other permissible exercise of the Commonwealth's police power. As such, Petitioner maintains that the surcharge violates the uniformity provisions of Article VIII, Section 1 of the Pennsylvania Constitution [3] because it discriminates in favor of physicians maintaining only one-half or less of their practice within the Commonwealth. Petitioner further argues that levy of the surcharge by the Fund, a non-elective body, is violative of Article II, Section 1 of the Pennsylvania Constitution (vesting the legislative power of the Commonwealth in the General Assembly) and Article III, Section 31 (prohibiting the delegation of the tax power by the General Assembly).

Respondents dispute that the surcharge is a tax and maintain that enactment of the entire Act was a permissible exercise of the police power of the Commonwealth. In the alternative, Respondents argue that if this Court finds that the surcharge is a tax, the Act's validity is still not affected because the director of the Fund exercises no independent discretion in determining the amount of the surcharge assessed and the principle of uniformity is not disturbed by the differing treatments afforded physicians on the basis of the percentage of their practice in the Commonwealth.

## II

This Court is mindful of the well-established principle that the party challenging the constitutionality of an act bears a heavy burden to overcome the presumption of constitutionality. *McNelly Appeal,* 122 Pa.Commonwealth 601, 553 A.2d 472 (1989). Legislation will not be invalidated unless clearly violating the Constitution, and any doubts are to be resolved in favor of sustaining the legislation. *Penn-*

---

**3.** "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws." Pa. Const. art. VIII, § 1.

*sylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984).

■ The first issue to be resolved is whether the surcharge is in actuality a tax. Petitioner's argument is essentially that the surcharge is not a licensing fee enacted under the police power of the state nor a special assessment for goods and services and that therefore the surcharge must be a tax. The question of whether an enactment is a tax or regulatory measure is determined by the purposes for which it is enacted and not by its title. *City of Wilkes–Barre v. Ebert,* 22 Pa.Commonwealth Ct. 356, 349 A.2d 520 (1975).

Taxes have been defined as "burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes, and to defray the necessary expenses of government." *Woodward v. City of Philadelphia,* 333 Pa. 80, 86, 3 A.2d 167, 170 (1938). This Court has previously noted that:

> The common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while license fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government.

*Philadelphia v. Southeastern Pennsylvania Transportation Authority,* 8 Pa.Commonwealth Ct. 280, 287, 303 A.2d 247, 251 (1973). In *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953), the Supreme Court identified the features of a license fee:

> The distinguishing features of a license fee are (1) that it is applicable only to a type of business or occupation which is subject to supervision and regulation by the licensing authority under its police power; (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse

the licensing authority for the expense of the supervision and regulation conducted by it.

*Id.,* 374 Pa. at 615, 98 A.2d at 188. In *Wilkes– Barre* this Court indicated that a license tax fee of $100 per year was in reality a tax enacted for general revenue purposes because no scheme of regulation or inspection was contemplated or put into effect. Petitioner requests that a similar finding be made here. As to Petitioner's argument that the surcharge is not a special assessment, he cites *Supervisors of Manheim Township v. Workman,* 350 Pa. 168, 38 A.2d 273 (1944) and *S.O.L. Club, Inc. v. City of Williamsport,* 65 Pa. Commonwealth Ct. 351, 443 A.2d 410 (1982), which held that special assessments were one time quid pro quo charges for improvements, the benefits of which were received by the assessee.

■ This Court however finds that the surcharge is not a tax[4] as its purpose is not to raise revenues for public purposes or to defray the necessary expenses of government. Section 1301.701(e)(2) in fact specifically provides that all funds raised by the surcharge are to be "held in trust, deposited in a segregated account, invested and reinvested by the director, and shall not become a part of the General Fund of the Commonwealth." Any income realized by investment remains the exclusive property of the Fund, and any claims and expenses against the Fund are specifically deemed not to be debts of the Commonwealth. *See* Section 1301.701(e)(4) of the Act. Although the surcharge may not fit squarely within the four-part test of *National Biscuit,* it falls more logically into the category of a license fee as opposed to any other category. Both parties agree that the Commonwealth has the authority to police the medical profession and the insurance industry and that it does in fact do so. In order to practice medicine in Pennsylvania, physicians with more than fifty percent of their practice in the Commonwealth must carry the basic coverage required by the Act and must contribute toward the

---

4. Given the finding that the surcharge is not a tax, Petitioner's argument that the surcharge violates the Pa. Const., art. VIII, § 1, art. II, § 1 and art. III, § 31 need not be addressed.

excess coverage provided by the Fund. Failure to do so is grounds for the loss of license. Thus factors one and three of *National Biscuit* are satisfied.

Petitioner maintains that the second and fourth requirements of *National Biscuit* are most problematic in that the Fund does not supervise or regulate Petitioner's profession and that the purpose of the surcharge is not to reimburse the fund for the expense of that supervision. Petitioner presents a very narrow reading of *National Biscuit* and of relevant portions of the Act. To the contrary, the Fund does regulate Petitioner's business to the extent that it demands his participation and contribution in the program designed by the General Assembly to alleviate what was perceived to be a shortage of available medical malpractice coverage in Pennsylvania. A tax is characterized by the production of large income and the high proportion of income relative to the cost of collection and supervision. *Greenacres Apartments, Inc. v. Bristol Township*, 85 Pa. Commonwealth Ct. 572, 482 A.2d 1356 (1984). In addition to the expense involved in administering the Fund, a part of the cost of supervision and regulation is the actual payment of claims to patients. This Court thus agrees with Respondents that when viewed in the context of the total legislative scheme of the Act, the surcharge does meet the requirements set forth in *National Biscuit*.[5]

Accordingly, Petitioner's motion for summary judgment is denied, and the motions for summary judgment filed by Respondents are granted.

## ORDER

AND NOW, this 7th day of March, 1990, the motion for summary judgment filed by Petitioner Robert A. White,

---

5. This Court has previously declared the Act to be a valid exercise of the Commonwealth's police power and not violative of the due process or equal protection clauses of the U.S. Constitution. *McCoy v. State Board of Medical Education and Licensure,* 37 Pa. Commonwealth Ct. 530, 391 A.2d 723 (1978). Petitioner is not challenging *McCoy* nor is he questioning *Meier v. Anderson,* 692 F.Supp. 546 (E.D.Pa.1988) wherein the United States District Court for the Eastern District of Pennsylvania upheld the constitutionality of the Act.

M.D. is denied.  The motions for summary judgment filed by the named Respondents are hereby granted.